UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMBER WENZEL,

       Plaintiff,

                                  Case No. 1:21-cv-908

v.

                                  Hon. Hala Y. Jarbou

PHILLIP TREMONTI,
KRISTA TREMONTI,

       Defendants.

_____/

## OPINION

In this diversity action,[1] Plaintiff Amber Wenzel sues Defendants Phillip and Krista Tremonti for an injury she suffered after riding a zip line on Defendants' property.  Before the Court are Defendants' motion to amend their answer (ECF No. 30), Defendants' motion to dismiss the complaint (ECF No. 39), and Defendants' motion for summary judgment (ECF No. 46).  For the reasons herein, the Court will grant the motion for summary judgment and deny the other motions as moot.

## I. BACKGROUND

The following is a summary of the evidence, viewing the facts in a light most favorable to Plaintiff.  Defendants reside in a house at 7887 Helena Road, in Helena Township, Michigan.  They also own a house on an adjacent parcel of land at 7819 Helena Road.  They use the latter as a short-term rental property.   Plaintiff and her friends rented the house at 7819 Helena Road (the "Rental House") for three days in August 2020.

---

[1] Plaintiff is a citizen of Illinois.  Defendants are Michigan citizens.  The amount in controversy exceeds $75,000.

Plaintiff discovered the Rental House through Airbnb and chose to stay there because it was close to Torch Lake, where she and her friends planned to rent a pontoon boat. (Wenzel Dep. 67-70, ECF No. 47-1.) She communicated directly with Krista Tremonti and decided to rent it before arriving. (*Id.* at 74.)

Plaintiff and her friends met Krista Tremonti at the Rental House when they arrived on August 17, 2020. Krista showed them the inside of the house and explained the rules for use of the property. Before leaving, Krista offered Plaintiff and her friends the opportunity to use a zip line that Phillip Tremonti had constructed at Defendants' residence. (*Id.* at 73.) Krista said Defendants made the zip line available to "all of our guests to enhance their experience and to . . . make it a more memorable trip[.]" (*Id.*) Krista told them to let her know when they wanted to use it. (*Id.* at 74-75.) This was the first time that Plaintiff learned about the zip line. It was not mentioned on the Airbnb listing, and Plaintiff did not believe that using it was part of the rental fee. (*Id.* at 73-74, 78.) Plaintiff believed Defendants had offered to let Plaintiff and her friends use the zip line because Plaintiff was renting the Rental House. (*Id.* at 125.)

Two days later, Plaintiff texted Krista and inquired about using the zip line. Plaintiff asked Krista whether "there was a weight limit or anything of that sorts." (Text Messages, ECF No. 47-3, PageID.273.) Plaintiff weighed about 200 pounds at the time and some of her friends were "on the heavier side"; she was concerned that they were too heavy for the zip line. (Wenzel Dep. 20, 80.) Krista responded that her husband, Phillip, "says you just have to be able to hold your own weight while holding the handle[.]" (Text Messages, PageID.273-274.)

After communicating with Phillip, Plaintiff and her friends went over to Defendants' home to try the zip line. (Wenzel Dep. 81.) The line was attached to the second-floor balcony at the back of Defendants' home. (*Id.* at 84.) The handle of the zip line was a set of handlebars clipped

to a trolley.  (*Id.* at 85; Photo, ECF No. 47-4.)  As shown in video of the incident, the line ran down the length of Defendants' back yard, which slopes away from the house for much of that length before sloping up again near some trees at the end.  The line first ran over a stretch of grass, then over a stone walkway, then over a small pond surrounded by large rocks, and then over another stretch of grass before ending at a wooden ramp or platform near the trees.

Phillip Tremonti showed the group how to use the zip line by using it himself.  (Wenzel Dep. 86.)  To Plaintiff, "it was obvious that you had to hold on."  (*Id.*)  One of Plaintiff's friends, Jacob Buber, went next.  A video shows him standing on a raised platform by the balcony with his arms above his head, holding the handle of the zip line.  The platform is a few feet above the ground.  He then lifted his legs and glided down the line until he reached the wooden ramp at the other end.  (Snapchat Video of Jacob Buber, ECF No. 47-6.)  Next, Plaintiff's friend Candice rode the zip line from one end to the other.  (Wenzel Dep. 91.)

Plaintiff watched Phillip, Jacob, and Candice use the zip line.  She thought it looked "pretty simple."  (*Id.* at 90.)  But she was hesitant to go because she was worried that it would not hold her.  (*Id.* at 92.)  To address her fears, Phillip had her "test" the line by hanging on it using the handlebars.  (*Id.* at 92-93.)  He told her, "As long as you can hang on for five seconds, you'll make it completely across."  (*Id.* at 92.)  With the handlebar and trolley fixed in place, she hung onto it while he counted to five.  (*Id.* at 95.)  She was only able to hold her weight for about four seconds.  (*Id.*)  She was aware that it took longer than four seconds to make it all the way down the line.  (*Id.* at 94-95.)  In fact, the video of Jacob's ride indicates that it lasted about 15 seconds from beginning to end.  Phillip assured Plaintiff, telling her, "[Y]ou're basically there, you'll be fine, just go for it."  (*Id.* at 92, 95.)

3

In spite of her concerns, Plaintiff decided to try the zip line.  A video of her ride shows her gliding over the first stretch of grass, the walkway, and the pond.  After she made it to the second stretch of grass, her hands "slipped" off the handlebar and she fell to the ground.  (*Id.* at 104-05.) Plaintiff says it felt like the handle "hit something a little bit" and she "felt a jerk" in her hand.  (*Id.* at 105.)  Plaintiff is "not sure" how far she fell (*id.*), but based on the video, it appears that she fell a distance of about three feet.  She landed on her feet and fell forward, breaking her left ankle. Plaintiff's injury required her to go to the hospital, where she had surgery on her ankle the day after the accident.  (*Id.* at 34.)  She underwent a second surgery in September 2020 to correct the first surgery.  (*Id.* at 35-37.)

Plaintiff seeks damages for her injury.  She brings this action against Defendants based on claims of negligence, premises liability, and a violation of Mich. Comp. Laws § 554.139.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Summary judgment is not an opportunity for the Court to resolve factual disputes.  *Id.* at 249.  The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor."  *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

## III. ANALYSIS

### A. Premises Liability

"A claim based on the condition of the premises is a premises liability claim." *Finazzo v. Fire Equip. Co.*, 918 N.W.2d 200, 205 (Mich. Ct. App. 2018). "To prevail on a premises-liability claim, [a] plaintiff[] must establish that defendants owed [her] a duty of care." *Est. of Livings v. Sage's Inv. Grp., LLC*, 968 N.W.2d 397, 402 (Mich. 2021). "The duty element represents the legal obligation that arises from the relationship between the parties." *Id.*

#### 1. Standard of Care

There are three "categories for persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, or (3) invitee." *Stitt v. Holland Abundant Life Fellowship*, 614 N.W.2d 88, 91 (Mich. 2000). "Each of these categories corresponds to a different standard of care that is owed to those injured on the owner's premises." *Id.* Here, the parties dispute whether Plaintiff was a licensee or an invitee.

"A 'licensee' is a person who is privileged to enter the land . . . by virtue of the possessor's consent." *Id.* "A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit." *Id.* at 91-92.

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

*Blackwell v. Franchi*, 914 N.W.2d 900 (Mich. 2018) (quoting *Preston v. Sleziak*, 175 N.W.2d 759, 765 (Mich. 1970)).

"An 'invitee' is 'a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and [to] make [it] safe for [the invitee's] reception." *Stitt*, 614 N.W.2d at 92 (quoting *Wymer v. Holmes*, 412 N.W.2d 213, 215 n.1 (Mich. 1987)). "[I]nvitee status is commonly afforded to persons entering upon the property of another for business purposes." *Id.*

"The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Id.*

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if the owner: (a) knows of, or by the exercise of reasonable care would discover, the condition and should realize that the condition involves an unreasonable risk of harm to such invitees; (b) should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect invitees against the danger.

*Id.*

According to *Stitt*, "[i]t is the [land]owner's desire to foster a commercial advantage by inviting persons to visit the premises that justifies imposition of a higher duty [for invitees]." *Id.* at 95. "[T]he prospect of pecuniary gain is a sort of quid pro quo for the higher duty of care owed to invitees." *Id.* Accordingly, "the owner's reason for inviting persons onto the premises is the primary consideration when determining the visitor's status:  In order to establish invitee status, a

6

plaintiff must show that the premises were held open for a *commercial* purpose." *Id.* Put another way, the purpose of the visit "must be directly tied to the owner's commercial business interest." *Id.*

Here, there is sufficient evidence to create a genuine dispute of fact as to whether Plaintiff was an invitee or licensee. On the one hand, the parties' relationship stemmed from Plaintiff's use of the Rental House, not the zip line. The zip line was not part of the Rental House; it was located on a separate parcel of land at Defendants' residence. Plaintiff acknowledged that she was not aware of the zip line when she agreed to rent the property. She also acknowledged that use of the zip line was not part of the rental agreement. Thus, a jury could conclude that Defendants' offer for Plaintiff to use the zip line was simply an act of generosity, separate and distinct from the parties' commercial relationship.

On the other hand, Plaintiff and her friends received the offer only because they were renting Defendants' house. In other words, Plaintiff was not making a social visit to Defendants' residence. Her relationship to Defendants was primarily a commercial one. *See Hoffner v. Lanctoe*, 821 N.W.2d 88, 99 (Mich. 2012) ("[T]he crucial question when determining invitee status is the commercial nature of the relationship between the premises owner and the other party."). In addition, Krista told Plaintiff that Defendants offered the use of their zip line to "enhance" Plaintiff's rental experience. From this evidence, a jury could conclude that Defendants made the offer to further their business interests. Although Defendants did not stand to gain additional income from Plaintiff in that particular instance, it is not hard to see how improving Plaintiff's rental experience might benefit Defendants in the future by increasing the appeal of their Rental House for future reservations by Plaintiff or other potential customers. Consequently, a jury could conclude that Plaintiff was an invitee because Defendants' invitation for Plaintiff to use the zip

line was directly tied to Defendants' commercial business interests. Thus, to the extent Defendants rely on the duty of care applicable to licensees, they are not entitled to summary judgment.

### 2. Open & Obvious Danger

Whether Plaintiff was an invitee or licensee, Defendants owed no duty of care to Plaintiff for dangers that were open and obvious. A landowner "'owes no duty to protect or warn' of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner*, 821 N.W.2d at 94 (quoting *Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 681 (Mich. 1992)). "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id.*

Here, Defendants note that the dangers inherent in riding the zip line were open and obvious. Indeed, as Plaintiff acknowledges, it was obvious that she had to hold onto the handlebar of the zip line for the duration of her ride (or let go and drop into the pond) in order to avoid injury. And she had seen several others ride the zip line before her, so she knew how long the ride would last. Although Phillip Tremonti assured her that she would be "fine," only she could know what she was capable of doing.

There is a "limited exception" to the duty regarding open and obvious hazards, which arises when "*special aspects* of a condition make even an open and obvious risk unreasonable." *Id.* at 95. This exception applies to "an 'unusual' open and obvious condition that is 'unreasonably dangerous' because it 'present[s] an extremely high risk of severe harm to an invitee' in circumstances where there is 'no sensible reason for such an inordinate risk of severe harm to be presented.'" *Id.* (quoting *Lugo v. Ameritech Corp.*, 629 N.W.2d 384, 387 n.2 (Mich. 2001)). An example of an unreasonably dangerous condition is an "unguarded thirty-foot-deep pit in the middle of a parking lot." *Lugo*, 629 N.W.2d at 387. Even though such a condition would be open,

8

obvious, and avoidable, it would be unreasonably dangerous to maintain it without safeguards because it would present a "substantial risk of death or severe injury to one who fell in the pit[.]" *Id.*

Here, there is no evidence of a substantial risk of death or severe injury associated with use of the zip line. Phillip Tremonti testified that "over 200 people" had ridden the zip line before Plaintiff did. (P. Tremonti Dep. 60, ECF No. 47-9.) Plaintiff presents no evidence that anyone, other than herself, was injured while using it. The zip line is not like the thirty-foot-deep pit in *Lugo*, where "falling an extended distance" would be expected to cause "severe injury." *Lugo*, 629 N.W.2d at 388; *accord Woodbury v. Bruckner*, 650 N.W.2d 343, 346, 349 (Mich. Ct. App. 2001) (unrailed rooftop porch, over nine feet above the ground, was unreasonably dangerous; the plaintiff fell and shattered both her ankles and legs, leading to amputation of one leg). In contrast, Plaintiff fell a few feet while gliding over a grassy area and then broke her ankle. She did not fall an extended distance and suffer a severe injury.

Furthermore, there are sensible reasons for the risks. Phillip Tremonti testified that he created the zip line so that he could "drop in" to his pond. (P. Tremonti Dep. 15.) Similarly, he told Plaintiff, "[Y]ou grab a hold of the handlebars, you [go] across, and you jump in the pond or you [go] up to the platform[.]" (Wenzel Dep. 91.) In other words, he created it for enjoyment. And to the extent safety measures like a harness would have prevented him from dropping into the pond, those measures would have prevented him using it for his particular purposes.

Plaintiff argues that there are "special aspects" in this case that created an unreasonable risk of harm. First, she argues that Phillip Tremonti affirmatively represented that the zip line was safe. That representation, however, does not change the nature of the zip line itself or the obviousness of the risks associated with its use. Indeed, the open and obvious test focuses on the

"objective nature of the condition of the premises at issue." *Lugo*, 629 N.W.2d at 390.  Similarly, the special aspects of a condition are those that "give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided[.]"  *Id.* at 387.  Statements by others do not change the likelihood of harm if the risk is not avoided.  Thus, Phillip's representation is not a special aspect of the zip line or its risks.

Next, Plaintiff argues that Defendants knew that the zip line lacked "requisite safety apparatuses." (Pl.'s Summ. J. Resp. Br. 12.)  To the extent Plaintiff refers to the lack of a harness or brake, Plaintiff was also aware of these conditions.  Their absence does not change the open and obvious characteristics of the zip line.  And as discussed above, there is no evidence that, without such safety measures, the zip line posed a substantial risk of death or severe injury.  In short, Plaintiff does not identify any special aspects that made the zip line unreasonably dangerous.  Thus, Plaintiff's premises liability claim is barred by the doctrine of open and obvious dangers.[2]

### B. Negligence

Plaintiff also asserts a claim of negligence.  "'To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) causation, and (4) damages.'"  *Laier v. Kitchen*, 702 N.W.2d 199, 210 (Mich. Ct. App. 2005) (quoting *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (Mich. 2000)).  "A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm."  *Riddle*, 485 N.W.2d at 681.  Ordinary negligence claims are not subject to the open and obvious danger defense.  *Laier*, 702 N.W.2d at 209.

---

[2] Plaintiff speculates that the Michigan Supreme Court might change the open and obvious doctrine in the near future; however, the Court must apply the law as it stands today.

Where there is a claim for premises liability, a plaintiff can assert negligence claim that is "grounded on an independent theory of liability based on the defendant's conduct[.]" *Laier*, 702 N.W.2d at 208. "'Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land,' and . . . if a plaintiff's injury 'arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence.'" *Spencer v. DTE Elec. Co.*, 718 F. App'x 376, 381 (6th Cir. 2017) (quoting *Buhalis v. Trinity Continuing Care Servs.*, 822 N.W.2d 254, 258 (Mich. Ct. App. 2012)). "An action sounds in premises liability rather than ordinary negligence 'even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury.'" *Pugno v. Blue Harvest Farms LLC*, 930 N.W.2d 393, 402 (Mich. Ct. App. 2018) (quoting *Buhalis*, 822 at 258).

Here, Plaintiff contends that Defendants owed her a duty of care to not act negligently with respect to the "construction and installation" of the zip line. (Pl.'s Summ. J. Resp. Br. 10, ECF No. 51.) Plaintiff claims that Defendants were negligent because they failed to adhere to the requirements of the zip line parts manufacturer with regard to the slope of the zip line, which Plaintiff contends exceeded the three percent slope recommended by the manufacturer. Also, Plaintiff asserts that Defendants were negligent by failing to provide "safety apparatuses such as a harness, seat and/or braking system." (*Id.*) Accordingly, Plaintiff contends that Defendants' *conduct* is the basis for negligence liability, separate and apart from any premises liability.

Plaintiff's argument is not persuasive. First, there is no evidence that any alleged negligence in the construction of the zip line with regard to its slope or lack of a braking system caused Plaintiff's injury. Plaintiff fell and broke her ankle because she lost her grip on the

handlebar.  There is no evidence that the slope of the zip line or the lack of a braking system caused the accident or contributed to Plaintiff's injury.

Second, to the extent Plaintiff relies on Defendants' failure to include a seat or harness, Plaintiff is effectively asserting a premises liability claim.  The lack of a seat or harness were conditions of the zip line, rather than conduct by Defendants.  This case is not like *Laier*, in which the defendant negligently repaired a front-end loader and then removed a broken fitting from the loader while the plaintiff was assisting the defendant, causing the bucket to fall on the plaintiff. *Laier*, 702 N.W.2d at 204-05.  There, the court concluded that the independent basis for negligence liability was the defendant's "failure to exercise care in the repair of the front-end loader and his operation of the equipment before the bucket fell[.]"  *Id.* at 209.  In contrast, Defendants intentionally constructed the zip line without a seat or harness; they did nothing shortly before or during Plaintiff's use of it that caused her injury.  Thus, Plaintiff's asserted negligence claim sounds in premises liability and is barred by the open and obvious danger defense.

Plaintiff relies on *James v. Alberts*, 626 N.W.2d 158 (Mich. 2001), in which the plaintiff's injuries occurred while he was assisting the defendant with digging a trench.  *Id.* at 159.  There, the  Michigan Supreme Court noted that, "if a person is injured by the direct negligence of another, whom he is attempting to assist, the latter's duty generally turns on foreseeability."  *Id.* at 160. That case is distinguishable.  Plaintiff does not contend that she was attempting to assist Defendants, so the principle in *James* does not apply.  Moreover, that court also noted that its case concerned premises liability, and it remanded the matter to the trial court to determine the plaintiff's status (i.e., trespasser, licensee, or invitee) and the defendant's duty associated with that status.  *Id.* at 163.  Likewise, Plaintiff's negligence claim arises from the condition of Defendants' property.  As such, it is barred for the same reason as her premises liability claim.  The risk of

harm was open and obvious.  Plaintiff could have avoided it; instead, she voluntarily subjected herself to that risk.

### C. Violation of Mich. Comp. Laws § 554.139

Plaintiff asserts a violation of Mich. Comp. Laws § 554.139, which provides that where there is a "lease or license of residential premises," the "lessor" or "licensor" must keep "the premises and all common areas . . . fit for the use intended by the parties."  Mich. Comp. Laws § 554.139(1)(a).  Plaintiff claims that the zip line was not fit for the use intended.

The foregoing statute does not apply here because there is no genuine dispute that Plaintiff did not lease or license the premises where the zip line was located.  The duties set forth in Mich. Comp. Laws § 554.139 "exist between . . . contracting parties."  *Mullen v. Zerfas*, 742 N.W.2d 114, 115 (Mich. 2007).  As Plaintiff admitted in her deposition, she did not pay for use of the zip line and she had "no recourse" if Defendants decided not to let them use it.  (Wenzel Dep. 109-10.)  The rental agreement was "totally separate" from the use of the zip line.  (*Id.* at 77.)  In fact, the written rental agreement mentions only the "Property . . . located at 7819 Helena Rd"; it does not mention the property where the zip line was located.  (*See* Rental Agreement, ECF No. 30-1.)

Plaintiff and her friends did testify that they believed Defendants invited them to use the zip line because they were renting the Rental House.  (*See* Wenzel Dep. 126; Buber Dep. 32-33, ECF No. 47-5; Viramontes Dep. 31, ECF No. 47-7; Loye Dep. 44, ECF No. 47-8.)  However, Plaintiff also made clear that the rental agreement itself was for the Rental House only.  (Wenzel Dep. 126; *see also* Buber Dep. 32 (stating that the zip line "wasn't part of our Airbnb . . . . They offered it to us because it was their home, they were nice people"); Loye Dep. 17 (affirming that the zip line "didn't have anything to do with the rental property").)  Thus, by her own admission, the use of the zip line was not part of the rental contract between Plaintiff and Defendants.

13

Plaintiff argues that a "license" under Mich. Comp. Laws § 554.139 is simply "'permission to do some act or series of acts on the land of the licensor without having any permanent interest in it[.]'"  (Pl.'s Dismissal Response Br. 7, ECF No. 43 (quoting *Kitchen v. Kitchen*, 641 N.W.2d 245, 249 (Mich. 2002)).)  And because Defendants permitted Plaintiff to use their zip line, Plaintiff argues that she was a "licensee" under the statute and that Defendants were "licensors."  However, Plaintiff cites no case in which a court applied Mich. Comp. Laws § 554.139 to a circumstance in which a landowner merely permitted another individual to use the owner's property.  By contrast, in *Mullen*, the Michigan Supreme Court stated that the statute applies to *contractual* relationships.  Similarly, in another case, that court explained that the "statutory protection" in Mich. Comp. Laws § 554.139 "arises from the existence of a residential lease and consequently becomes a statutorily mandated term of such lease."  *Allison v. AEW Capital Mgmt., LLP*, 751 N.W.2d 8, 12 (Mich. 2008).  Thus, Michigan courts have indicated that the statute applies where there is a formal contract to use property.  Consequently, it does not apply here, where it appears that there was no contract regarding the use of the zip line at Defendants' personal residence.

Plaintiff's interpretation of the statute would lead to absurd results.  Mich. Comp. Laws § 554.139 codified the implied warranty of habitability that traditionally applied to landlords.  *See Allison*, 751 N.W.2d at 20-21 (Corrigan, J., concurring).  Yet Plaintiff's definition of licensees would encompass all social guests of a property owner.  Consequently, Plaintiff's interpretation would impose on *all* property owners the same obligation to their social guests (i.e., the warranty of habitability) that landlords owe to their tenants.  In addition, because the statutory obligations in Mich. Comp. Laws § 554.139 are not subject to the open and obvious danger defense, *see Allison*, 751 N.W.2d at 12, licensees would receive more protection under Plaintiff's interpretation

14

than invitees.  The Court is not persuaded that the Michigan legislature intended such results. Accordingly, Plaintiff does not state a claim under Mich. Comp. Laws § 554.139.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff has failed to establish a genuine dispute of material fact or otherwise shown that her claims can proceed.  Accordingly, the Court will grant Defendants' motion for summary judgment and enter a judgment dismissing Plaintiff's claims. The Court will deny Defendants' other motions because they are moot.  The outcome of those motions would not impact the resolution of Plaintiff's claims.

The Court will enter an order and judgment consistent with this Opinion.


Dated: December 15, 2022                    /s/ Hala Y. Jarbou
                                            HALA Y. JARBOU
                                            CHIEF UNITED STATES DISTRICT JUDGE